# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
**NO. 03-08-00012-CV**
---

**In the Matter of J. F.**

---
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. J-28,431, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**
---

## M E M O R A N D U M   O P I N I O N

A juvenile court adjudicated J.F. delinquent after finding that he committed the offense of assault. On appeal, J.F. contends that (1) the judgment of delinquency erroneously recites two counts of assault even though he was found to have committed only one; (2) the juvenile court deprived him of due process by misconstruing the burdens of proof on his self-defense claim; and (3) the evidence was factually insufficient to show that he committed assault. We will modify the judgment and affirm it as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

J.F. and a classmate got into an altercation while standing in line at their school's cafeteria. J.F. punched his classmate once in the face. It is not clear from the record exactly how the altercation ended, but after it did, James Thorpe, an Austin Independent School District ("AISD") police officer, investigated. Besides J.F. and the classmate J.F. punched, Officer Thorpe interviewed only one witness: a woman who worked in the cafeteria. She told Officer Thorpe that she had seen

J.F. punch his classmate but had not seen everything that transpired between the boys beforehand.

Officer Thorpe interviewed and photographed J.F. and his classmate soon after the incident. A close-up photograph of J.F.'s hand showed swelling and bruising. Head-shot photographs of J.F. did not appear to show any damage to J.F.'s face or neck. The photograph of J.F.'s classmate, however, clearly showed swelling and bruising around one of his eyes.

After interviewing and photographing J.F. and his classmate, Officer Thorpe phoned the classmate's mother. She told Officer Thorpe that she wished to press charges against J.F., so Officer Thorpe called fellow AISD officer Chris Roddy to pick up J.F. and transport him to Gardner-Betts Juvenile Detention Center. After Officer Roddy arrived at J.F.'s school, Officer Thorpe called J.F's father to inform him that J.F. was going to be arrested and taken to Gardner-Betts. J.F's father had spoken with J.F. on the phone by that point, and he told Officer Thorpe to inspect J.F's neck for damage because J.F. claimed that he had been choked by his classmate before punching him. Officer Thorpe inspected J.F.'s neck and saw no injuries. Officer Roddy was present during the inspection and later testified that he did not remember noticing any injuries to J.F.'s neck at the time. Before handcuffing J.F. and putting him in the back of his police car for transport, Officer Roddy asked J.F. if he had any injuries. J.F. mentioned only his hand, which he said had been broken in a previous, unrelated incident.

Officer Roddy noticed that J.F. appeared to move around a good deal in the back of the police car during the approximately twenty-minute trip to Gardner-Betts. After arriving at Gardner-Betts, Officer Roddy informed the intake officer that J.F.'s hand was injured. The intake officer accordingly called the facility's nurse, who examined J.F. and, among other things, noticed

2

red marks on his neck. Officer Roddy also saw the marks on J.F.'s neck at that time.

J.F.'s father picked up J.F. from Gardner-Betts several hours later. Shortly after doing so, he took pictures of J.F.'s neck with his cellular telephone. The pictures appear to show marks or abrasions on both sides of J.F.'s neck. J.F. introduced those photographs as evidence at trial.

The State eventually filed a petition charging J.F. with two counts of assault: one for punching his classmate, and one for pushing his classmate. A bench trial was held. The State called the following witnesses: the cafeteria worker who had seen J.F. punch his classmate; the classmate himself; the classmate's mother; Officers Thorpe and Roddy; and Officer Jerry Stovall, an AISD officer with whom J.F.'s father spoke the day after the fight. J.F. did not testify himself, but he called as witnesses his father and two classmates who claimed to have seen the fight. J.F.'s attorney argued self-defense; she claimed, and J.F.'s witnesses testified, that J.F. had punched his classmate only after the classmate tried to choke him.

After trial, the court recited its findings orally. It found that the State had proven beyond a reasonable doubt that J.F. had assaulted his classmate by punching him. The court did not address whether J.F. had also pushed his classmate. The court also found that "some of [J.F's] witnesses were extremely incredible" and that "the defense has not met its burden on the [self-defense] claim as it shifted over to the State." The court sentenced J.F. to six months' probation and required him to complete 20 hours of community service and an anger-management course.

The court subsequently formalized its findings by signing a Judgment of Delinquency. In contrast to the court's oral recitations, the Judgment stated that J.F. had assaulted his classmate by both punching and pushing him. J.F. subsequently appealed.

## STANDARD OF REVIEW

We apply the same standards of proof and review to juvenile cases as we do to criminal cases. *See* Tex. Fam. Code Ann. § 54.03(f) (West 2008 & Supp. 2009); *In re C.M.G.*, 180 S.W.3d 836, 838 (Tex. App.—Texarkana 2005, pet. denied). Thus, in a factual-sufficiency review, we view the evidence in a neutral light and ask whether the fact-finder was rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then determine (1) whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or (2) whether the verdict is against the great weight and preponderance of the conflicting evidence. *Id*. at 414-15. We will not reverse a verdict for factual insufficiency unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the fact-finder's verdict. *Id*. at 417. Nor will we intrude on the fact-finder's role as the sole judge of the weight and credibility of witness testimony. *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). The trial judge is the fact-finder in bench trials, and we give the same deference to a trial judge's credibility and weight determinations as we would a jury's. *See Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995).

## DISCUSSION

J.F. raises three issues on appeal. We address them in turn.

### *The Judgment Erroneously States that J.F. Was Adjudicated Guilty of Two Counts of Assault*

J.F. argues that we should reform the Judgment of Delinquency because it states that

J.F. assaulted his classmate by both punching and pushing him, whereas the juvenile court orally pronounced only a finding that J.F. punched his classmate. The State's petition charged two counts of assault, one for punching and one for pushing. The State admits, though, that at the conclusion of trial the court made a finding only as to the punching count. Accordingly, the State concedes that the Judgment is erroneous and should be reformed. We therefore modify the Judgment to reflect that J.F. was found to have committed one count of assault by punching and was not found to have committed assault by pushing as well. *See* Tex. R. App. P. 43.2.

### *The Juvenile Court Applied the Wrong Burdens of Proof to J.F.'s Self-Defense Claim*

J.F. next argues that the juvenile court deprived him of due process by applying the wrong burdens of proof to his self-defense claim. In its written Findings of Fact and Conclusions of Law, the court stated: "Upon the State meeting its burden beyond a reasonable doubt, the burden then shifted to Respondent to prove, by a preponderance of the evidence, the affirmative defense of self-defense." J.F. is correct that this is a misstatement of the law; when a defendant claims self-defense, his only burden is to produce some evidence supporting the claim. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). The burden of persuasion then shifts to the State, which must prove beyond a reasonable doubt that the defendant did not act in self-defense. *See Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991).

The State admits that the juvenile court misstated the burdens governing J.F.'s self-defense claim but argues that, under the "right ruling, wrong reason" doctrine, the misstatement was harmless because the court "properly applied the self-defense rule and fully articulated the basis for its rejection of [J.F.'s] self-defense claim." *See State v. Herndon*, 215 S.W.3d 901, 905 n.4

5

(Tex. Crim. App. 2007) ("[T]the general rule is that a trial court's ruling will be upheld if it is correct on any applicable legal theory, even if the court articulated an invalid basis. This is the 'right ruling, wrong reason' doctrine.").

We agree with the State. Self-defense is an issue of fact to be determined by the fact-finder. *Saxton*, 804 S.W.2d at 913. Even though the court recited the wrong burdens of proof, it also explicitly found that (1) the State established its assault case beyond a reasonable doubt and (2) J.F.'s self-defense evidence was not credible. As we discuss below, the former finding was supported by factually sufficient evidence. Thus, under the correct burdens of proof, the court's findings supported a determination that J.F. did not act in self-defense. *See id*. The recitation of incorrect burdens of proof was therefore harmless. We overrule J.F.'s second point of error.

### The State's Evidence Was Factually Insufficient

Finally, J.F. argues that the State's evidence was factually insufficient to support a finding that J.F. assaulted his classmate. We disagree. Evidence is factually insufficient to support a verdict only if the great weight and preponderance of it contradicts the verdict. *See Watson*, 204 S.W.3d at 417. J.F. did produce some evidence to support his self-defense claim—namely, two eyewitnesses who testified that his classmate tried to choke him, and photographs taken several hours after the altercation that appeared to show damage to his neck. The juvenile court found J.F.'s witnesses incredible, however, and found it significant that the photos taken of J.F. immediately after the altercation did not also show damage to J.F.'s neck. The court also found the State's witnesses credible, including, most importantly, J.F.'s victim himself, who testified that he did not try to choke J.F. before J.F. punched him. We must defer to the court's credibility determinations, *see Joseph*,

6

897 S.W.2d at 376, and the photographs of J.F.'s neck are equivocal.[1]  On this record, then, we cannot say that the court's findings are "clearly wrong and manifestly unjust" or "against the great weight and preponderance of the conflicting evidence."  *Watson*, 204 S.W.3d at 414-15.  We overrule J.F.'s third point of error.

## CONCLUSION

We affirm the Judgment of Delinquency because it was supported by factually sufficient evidence.  We modify the Judgment, however, to reflect that J.F. was found to have committed only assault by punching, not assault by pushing as well.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Modified and, as Modified, Affirmed

Filed:  January 22, 2010

---

[1]  The State suggested that red marks first appeared on J.F.'s neck after J.F. was transferred to Gardner-Betts because J.F. likely scratched his neck on the seatbelt in the police car that transported him there.  The photographs taken of J.F. immediately after the altercation are consistent with this theory, as they do not show any red marks on J.F.'s neck.  On the other hand, those photographs are not close-ups like the photos taken of J.F. several hours after the altercation, so it is possible that their resolution was simply not high enough to show the marks.  It is also possible that the marks simply took some time to develop.  Whatever the case, taken together, the photographs of J.F.'s neck do not conclusively support either side's theory.